UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-cv-23301-ALTMAN/Hernandez

CHARLES HOLLIS,

     *Plaintiff*,

*v.*

DEUTSCHE BANK NATIONAL TRUST
COMPANY, *as Trustee*,

     *Defendant.*

                               /

## REPORT AND RECOMMENDATION

Plaintiff, Charles Hollis ("Plaintiff"), filed two Emergency Motions: the first for a Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing ("Injunction Motion") [ECF No. 7]; the second for Preservation of Surplus Funds and Disputed Escrow Proceeds, and to Permit Expedited Discovery (the "Preservation and Discovery Motion") [ECF No. 8].[1]  Plaintiff wants to prevent Defendant, Deutsche Bank National Trust Company ("Defendant"), from: (1) using the surplus funds generated from the foreclosure sale of his home; and (2) evicting him while this case remains pending.  [ECF No. 7 at 1–2 ¶¶ 1–3[2]].  He also seeks "narrowly tailored expedited discovery" to develop his anticipated federal claims.  [ECF No. 8 at 1–3].  After careful review, we respectfully recommend the Court **DENY** the Injunction Motion and **DENY** the Preservation and Discovery Motion.[3]

---

[1] The Honorable Roy K. Altman referred the matter to us for a Report and Recommendation.

[2] At various times, Plaintiff's filings have missing or repeating paragraph numbers.  And so, when citing only the paragraph number would lead to ambiguity, we cite to both the paragraph and page number.

[3] The Injunction Motion and the Preservation and Discovery Motion are fully briefed and ripe for adjudication.  Defendant responded on May 18, 2026, [ECF No. 13], and Plaintiff chose not to reply.

**BACKGROUND**

This case stems from two interconnected state court matters.  In 2016, Defendant filed a foreclosure action against Plaintiff in Miami-Dade Circuit Court[4] (the "Foreclosure Action").  The state court entered a final judgment of foreclosure, [ECF No. 1-2 at 7 ¶ 5], and the foreclosure sale occurred on April 21, 2026, [ECF No. 7 at 3 ¶ 4].  Shortly before the foreclosure sale, Defendant filed an affidavit supporting $108,910.97 in post-judgment advances (the "Claim for Post-Judgment Advances").  *Id.* at 3 ¶ 5.  The property sold for approximately $111,000 more than the final judgment amount (the "Surplus").  *Id.* at 3 ¶ 4.

On April 13, 2026, Plaintiff filed a "Verified Complaint for Independent Equitable Relief,"[5] bringing various state claims as well as a federal claim under the Truth in Lending Act[6] ("TILA") (the "Underlying State Action").  [ECF No. 1-2 at 1].  On April 21, 2026, he filed an emergency motion to halt the foreclosure sale, which the Miami-Dade Circuit Court denied, explaining that Plaintiff needed to petition the court in the Foreclosure Action for relief.  *Id.* at 25.  Three days later, Plaintiff filed his emergency motion in the Foreclosure Action, which was denied. [ECF No. 13-1 at 2–12].  Plaintiff continued filing numerous claims and motions in the Foreclosure Action challenging Defendant's Claim for Post-Judgment Advances.  [ECF Nos. 13-2 to 13-4].  On May 11, 2026, Defendants removed to federal court based on federal-question jurisdiction arising from Plaintiff's TILA claim.  [ECF No. 1 at 1–2].

Four days after removal, Plaintiff filed the Injunction Motion and his declaration in support of the same.  [ECF Nos. 7 & 9].  He seeks to prevent Defendant from gaining access to the Surplus or initiating eviction proceedings against him.  [ECF No. 7 at 2 ¶¶ 1–3].  Additionally, he asks that

---

[4] Case No. 2016-003907-CA-01. [ECF No. 1 ¶ 4].
[5] Case No. 2026-007504-CA-01. [ECF No. 1-2 at 1; ECF No. 7 at 2 ¶ 1].
[6] 15 U.S.C. § 1601 *et seq.*

Defendant be ordered to preserve all records related to the Claim for Post-Judgment Advances. *Id.* at 2 ¶¶ 4. Plaintiff's complaint alleges that he never received key disclosures concerning his home loan, in violation of TILA. [ECF No. 1-2 at 9 ¶¶ 14–16]. In the Injunction Motion, he claims that Defendant violated TILA by filing the Claim for Post-Judgment Advances, [ECF No. 7 at 4], a completely different theory of liability.

In the Preservation and Discovery Motion, filed the same day as the Injunction Motion, Plaintiff again challenges the Claim for Post-Judgment Advances, but never mentions TILA. *See* [ECF No. 8]. He requests an order from the Court (1) preventing disbursement of the Surplus; (2) requiring a "verified accounting" of Defendant's post-judgment advances; and (3) seeking expedited discovery, including depositions, regarding the post-judgment advance affidavit. *Id.* at 2 ¶¶ 1–4. He also requests an expedited hearing "on surplus preservation and the validity of the claimed advances." *Id*. at 2 ¶ 5. Defendant responded, opposing both the Injunction Motion and the Preservation and Discovery Motion. [ECF No. 13].

## LEGAL FRAMEWORK

The four factors courts consider when determining whether to grant a temporary restraining order are identical to the four factors used to decide whether to grant a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001) (applying the four-factor test to both temporary restraining orders and preliminary injunctions). The difference between the two forms of injunctive relief is that a temporary restraining order "may be issued 'without written or oral notice to the adverse party or its attorney[.]'" *Finkelstein v. Mount Sinai Med. Ctr. of Fla.*, No. 23-cv-20188, 2023 WL 6118179, at *2 n.1 (S.D. Fla. Sep. 19, 2023) (Altman, J.) (alteration in original) (quoting Fed. R. Civ. P. 65(b)(1)). The party seeking a preliminary injunction must show: "(1) it has a substantial likelihood of success on the merits; (2)

it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (footnote omitted).  A district court cannot grant a preliminary injunction unless the moving party satisfies *all four* of these requirements.  *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("Because Wreal must meet all four prerequisites to obtain a preliminary injunction, failure to meet even one dooms [his request].").  The plaintiff bears the burden of establishing its need for a preliminary injunction.  *See id*. at 1247 (explaining that plaintiff "bears the burden of persuasion to clearly establish all four [preliminary injunction] prerequisites." (internal quotations omitted)).

**ANALYSIS**

The Injunction Motion fails for two reasons: first, Plaintiff cannot show a substantial likelihood of success on the merits; second, he cannot establish irreparable harm.  The Preservation and Discovery Motion also fails because it simply repeats the conclusory allegations in the Injunction Motion and requests sweeping, merits discovery without a showing of good cause.

**I.      The Injunction Motion**

*A.  Likelihood of Success*

Preliminarily, we note that the Injunction Motion refers to an "Amended Complaint" that appears nowhere in the (state or federal) record.  [ECF No. 7 at 3 ¶ 3].  Nor has Plaintiff moved to amend the sole complaint in the Underlying State Action.  To the extent the Injunction Motion travels on a claim included in the Underlying State Action's complaint—which, again, is the *only* complaint—we consider it here.  But we cannot say that any of the claims raised in the TRO fit that description.  The only statute that appears in both the complaint and the Injunction Motion is

4

TILA, but the theories of liability underpinning these claims differ considerably between the two filings. The complaint accuses Defendant of withholding key disclosures in connection with Plaintiff's loan, while the Injunction Motion challenges Defendant's claim to part of the Surplus. This variance is important, because "injunctive relief must relate in some fashion to the relief requested in the complaint, and a district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Flories v. Parra*, No. 25-cv-25763, 2026 WL 96677, at *2 (S.D. Fla. Jan. 14, 2026) (Altman, J.) (cleaned up) (quoting *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997)). Because the complaint never mentions the Surplus, let alone Defendant's Claim for Post-Judgment Advances, the remedy Plaintiff seeks—freezing the Surplus—via injunctive relief is "not of the same character" and "deals with a matter lying wholly outside the issues in the suit." *See id.*

Even if we assume Plaintiff is traveling under the TILA claim in the complaint and seeks only to forestall eviction (thereby satisfying the requisite link between complaint and injunctive relief), he has nevertheless failed to establish a substantial likelihood of success on the merits.

First, Plaintiff's TILA claim is likely to be dismissed under the *Rooker-Feldman* doctrine.[7] The doctrine holds that federal courts—other than the Supreme Court—do not have subject-matter jurisdiction over "cases brought by state-court losers [(1)] complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and [(2)] inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Eleventh Circuit, discussing the doctrine, has said that a federal district court "lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997). The doctrine extends to claims

---

[7] The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

that are "inextricably intertwined" with a state court judgment, meaning the "federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

The Eleventh Circuit and many district courts in this circuit have applied *Rooker-Feldman* to dismiss actions where plaintiffs were—however they framed the federal action—challenging state-foreclosure judgments. *See Parker v. Potter*, 368 F. App'x 945, 948 (11th Cir. 2010) (rejecting under *Rooker-Feldman* a TILA claim that sought rescission of a state foreclosure judgment); *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892–93 (11th Cir. 2008) (holding that appellants' federal TILA claims were inextricably intertwined with a state-court foreclosure judgment and thus barred by *Rooker–Feldman*); *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132–33 (11th Cir. 2005) (affirming dismissal of TILA and other federal claims under *Rooker– Feldman* because they were inextricably intertwined with a state-court foreclosure proceeding); *AboyadeCole Bey v. BankAtl.*, No. 6:09–cv–1572–Orl–31GJK, 2010 WL 3069102, at *2 (M.D. Fla. Aug. 2, 2010) (applying *Rooker–Feldman* abstention where the case was, "at its core," an attempt to revisit a state-court foreclosure judgment); *Distant v. Bayview Loan Servicing, LLC*, No. 09-61460-CIV, 2010 WL 1249129, at *3 (S.D. Fla. Mar. 25, 2010) (Cohn, J.) ("Although plea[ed] as conspiracy claims . . . , Plaintiff is clearly asking this Court to invalidate the state court action by ruling that the state court foreclosure judgment is somehow void. Under the *Rooker– Feldman* doctrine, [defendant] is correct that this Court lacks subject matter jurisdiction, as Plaintiff seeks a *de facto* appeal of a previously litigated state court matter.").

Here Plaintiff seeks return—via rescission—of the very property he lost because of the state court foreclosure judgment. [ECF No. 1-2 at 9 ¶ 15]. Thus, the claim is inextricably intertwined with the foreclosure proceeding in state court, "as is shown by [his] request for an

6

injunction to restrain [Defendant] from enforcing the foreclosure." *Harper*, 138 Fed. App'x at 133. Moreover, Plaintiff had an opportunity to present this claim before the state court—and did. He raised TILA in his motion to set aside the foreclosure sale, which the court in the Foreclosure Action denied. [ECF No. 13-1 at 8 ¶ 6–8]. He renewed these arguments in a slew of motions pending before that same court. [ECF Nos. 13-2 to 13-4]. And so, not only does Plaintiff seek to undo a state foreclosure action, but he would have a federal court overturn a state-court decision rejecting his emergency motion in the Foreclosure Action. Both requests run afoul of *Rooker-Feldman*.

Abstention aside, Plaintiff's TILA claim—under both the complaint and Injunction Motion theories of liability—fails on the merits as well.

To assert a TILA claim, a plaintiff "must identify specific written disclosures that they were required to receive under TILA but did not." *Hack v. Wachovia Bank, N.A.*, No. 12-21436-CIV, 2012 WL 3043017, at *2 (S.D. Fla. July 25, 2012) (Moreno, J.). Neither the complaint, the Injunction Motion, nor Plaintiff's Declaration identify any such disclosures. Instead, the complaint simply asserts, "on information and belief that the originating lender[8] failed to provide complete and accurate TILA disclosures, including the Annual Percentage Rate, the total finance charge, and the itemization of the amount financed." [ECF No. 1-2 at 9 ¶ 15]. The Injunction Motion does not refer to disclosures at all, pivoting instead to the supposedly deficient Claim for Post-Judgment Advances: "[Defendant] used false, misleading, unfair, or unconscionable means to collect a debt by filing a post-judgment advance affidavit in the amount of $108,910.97." [ECF No. 7 at 4]. Adding to the confusion, Plaintiff groups together his TILA claim with other federal claims that never appear in his complaint. This will not do. *See Kosobucki v. Bank of Am., N.A.*,

---

[8] It is unclear whether "originating lender" refers to Defendant or a different entity.

No. 15-60458-CIV, 2015 WL 11198244, at *2 (S.D. Fla. July 30, 2015) (Scola, J.) (dismissing complaint and noting that TILA is a "highly specific statute[]" that had been "grouped together" with other claims without factual development).

Even construing Plaintiff's pleadings liberally, we discern no facts or evidence to support the TILA claim.  Indeed, the complaint offers only conclusory statements without factual development.  These thin reeds cannot establish a substantial likelihood of success.  *See Miracle Surrogacy, LLC v. Monello-Fuentes*, No. 25-cv-21575, 2025 WL 1154420, at *3 n.5 (S.D. Fla. Apr. 14, 2025) (Bloom, J.) (plaintiffs' conclusory allegations failed to show they were likely to prevail on the merits); *Banco Popular N. Am. v. Singer*, No. 08-80655-CIV, 2008 WL 11332055, at *1 (S.D. Fla. June 24, 2008) (Hurley, J.) (same, of irreparable injury).  Regarding the post-judgment advances issue, Plaintiff does not allege, much less show, that the claimed amount is unreasonable or disproportionate when compared to post-judgment advances in other foreclosure actions.  As for the TILA allegations in the complaint, Plaintiff does not specify which communications were misleading, which entity communicated them, how the misrepresentations harmed him, or when he received them.  This last point is important because, as Defendant points out in its response, [ECF No. 13 at 5–6], TILA claims are subject to strict limitations and repose periods measured from loan consummation, not from foreclosure or sale, 15 U.S.C. §§ 1635(f), 1640(e).  That said, at this juncture, we cannot assess the merits of a statute-of-repose argument because Plaintiff provides two completely different theories of liability, neither of which pass muster.

### B.  Irreparable Harm

To satisfy the second element of the temporary-restraining-order test, the party seeking the temporary restraining order must "demonstrate that irreparable injury is *likely* in the absence of an

injunction."   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).   "An injury is 'irreparable' only if it cannot be undone through monetary remedies."  *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987); *see also Bakhai v. BDO USA, P.C.*, No. 24-cv-23896, 2025 WL 3905140, at *1 (S.D. Fla. Oct. 8, 2025) (Altman, J.) (noting that financial injury does not constitute irreparable harm).

Plaintiff argues that, once the Surplus is "disbursed, transferred, offset, or absorbed by Defendants," his "ability to obtain meaningful relief will be impaired."  [ECF No. 7 at 4].   But money is fungible—precisely why monetary remedies are generally unavailable at this stage—and Plaintiff has not shown why freezing *these* funds is key to preventing irreparable harm.  Next, Plaintiff argues that "[o]nce eviction or title-transfer activity proceeds, the homestead injury becomes immediate and severe."  *Id.*   Here, too, Plaintiff presents conclusions in place of well-developed facts or reasonable inference.  He does not say why losing the security property—which has been the subject of a decade-long foreclosure suit—would lead to irreparable harm.  Nothing in the Injunction Motion suggests, for example, that Plaintiff cannot secure alternate housing or that this property has some irreplaceable characteristic, for which money is an inadequate substitute.

### C.  Balance of Harms

Plaintiff argues that Defendant will suffer "no cognizable prejudice" should the injunction move forward, yet he will lose "his home [and] the only financial recovery generated by the sale."  [ECF No. 7 at 4].   He also fears "the destruction of evidence needed to test Defendants' claimed advances." *Id.*

There are three problems with this equities analysis.  First, as noted in our discussion of irreparable harm, money is fungible, which means that, if Plaintiff ultimately secures a judgment

in his favor, it makes little difference whether the money used to satisfy that judgment comes from the foreclosure sale or Defendant's accounts.   Second, Plaintiff supplies nothing to suggest evidence is at risk of disappearing, and to the extent the Surplus is the "evidence" Plaintiff fears losing, he does not explain why a record of disbursement—showing how much Defendant received from the foreclosure sale—is insufficient.   Third, while the risk of eviction is a harm that would normally weigh in Plaintiff's favor, as discussed earlier, the theory of liability underlying the Injunction Motion focuses on the Surplus.   He emphasizes that Florida law creates a "rebuttable legal presumption" that he is entitled to the Surplus.   *Id.*   But if the Surplus is Plaintiff's ultimate remedy, then any harm resulting from his loss of the property is unavoidable.   That is because Plaintiff cannot lay claim to both the property and the profits from that property's sale.   Thus, we cannot say that Plaintiff has established the balance-of-equities element weighs in favor of granting relief.

### D.  Public Interest

Plaintiff asks the Court to *both* freeze the Surplus *and* preclude eviction.   Notably absent from his filing, however, is any reference to the foreclosure purchaser, that is, the innocent third party to be deprived of money (the purchase price) and property (the security property).   But injury to a member of the public warrants consideration,[9] particularly when the only justification for that injury is an underdeveloped and likely barred cause of action.   Moreover, as Defendant points out and as detailed in our *Rooker-Feldman* analysis, Plaintiff's requested relief invites state-federal disagreement, which is also against the public interest.   *Sw. Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 91 (5th Cir. 1977) ("[F]ew public interests have a higher claim upon the

---

[9] *AT & T Mobility LLC v. Bushman*, No. 11-80922-CIV, 2011 WL 5924666, at *4 (S.D. Fla. Sep. 23, 2011) (public interest favored injunctive relief by "ensuring that the thousands of affected third parties . . . do not have their rights and interests decided in a private action in their absence and without their consent").

discretion of a federal chancellor than the avoidance of needless friction with state policies")

(citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).[10]

## II.     The Preservation and Discovery Motion

Plaintiff asks the Court to "[o]rder that all surplus funds generated by the April 21, 2026

foreclosure sale remain preserved and not be disbursed to Deutsche Bank, Rocket, Logs,[11] any

assignee, purchaser, surplus recovery company, or other claimant." [ECF No. 8 at 1 ¶ 1].  He also

seeks an order compelling Defendant to provide a "verified accounting" and all supporting

documentation for the Claim for Post-Judgment Advances.  *Id.* at 2 ¶¶ 2–3.  Last, he moves for

expedited discovery, including depositions, and an "expedited evidentiary hearing on surplus

preservation and the validity of the claimed advances."  *Id.* at 2 ¶¶ 4–5.  To justify this

extraordinary request, Plaintiff again refers to the fees in the allegedly deficient Claim for Post-

Judgment Advances and argues they were "timed to consume virtually the entire surplus."  *Id.* at

2.  He says the requested relief is necessary to protect and develop his claims—claims he has yet

to bring.

The Preservation and Discovery Motion adds neither detailed facts nor evidence to support

the requested Surplus freeze and accounting.  Referring to the non-existent "Amended Complaint,"

Plaintiff argues that if the funds are "disbursed . . . , Plaintiff's [as-yet-unfiled] federal claims . . .

---

[10] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down before September 30, 1981.

[11] Plaintiff includes Rocket Mortgage and Logs Legal Group, along with several other entities that were not parties to the Underlying State Action, as defendants in the case style of the Injunction Motion.  Plaintiff's pleadings never explain the relationship these entities have to the litigation.  They are not named in the complaint and nothing in the record suggests they have been served.  Accordingly, they are not parties here.  *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *see also Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003) ("By definition, 'service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946))).

will be impaired and evidence may be lost." *Id.*  We are unpersuaded for three reasons.  First, Plaintiff cannot travel under claims he has not filed.  Second, he does not explain, with any degree of specificity, how disbursement of the funds will "impair[]" these unfiled claims. *See id.*  Third, Plaintiff supplies no reason to believe evidence will be lost if he does not receive the requested relief.

Turning to Plaintiff's request for expedited discovery, we find that he has not established good cause.  "The Federal Rules of Civil Procedure provide that discovery may commence before the parties have engaged in a discovery conference, if ordered by the court." *TracFone Wireless, Inc. v. Holden Prop. Servs.*, LLC, 299 F.R.D. 692, 694 (S.D. Fla. 2014) (Torres, J.) (emphasis removed).  Although the Eleventh Circuit has not adopted a standard for allowing expedited discovery, many district courts within the Eleventh Circuit have expressly used a general "good cause" standard when confronted with expedited discovery requests. *See, e.g.*, *In re Chiquita Brands Int'l, Inc.*, No. 07-CIV-60821, 2015 WL 12601043, at *4 (S.D. Fla. Apr. 7, 2015) (Marra, J.); *TracFone Wireless, Inc.*, 299 F.R.D. at 694; *Pulsepoint, Inc. v. 7657030 Canada Inc.*, No. 13-CIV-61448, 2013 WL 12158589, at *1 (S.D. Fla. Oct. 31, 2013) (Matthewman, J.); *Nassau Terminals, Inc. v. M/V Bering Sea*, No. 99-104-CIV-J-20C, 1999 WL 1293476, at *1 (M.D. Fla. July 1, 1999).

Courts assess "good cause" by weighing the need for quick discovery against the prejudice to the responding party. *See In re Chiquita Brands Int'l, Inc.*, 2015 WL 12601043, at *4.  "Good cause may be established by showing some impelling urgency which necessitates action forthwith . . . such as a showing that the desired testimony is in hazard of loss unless the deposition is taken forthwith." *See GE Seaco Servs., Ltd. v. Interline Connection, N.V.*, No. 09-CIV-23864, 2010 WL 1027408, at *1 (S.D. Fla. Mar. 18, 2010) (Seitz, J.) (cleaned up).

Plaintiff gives no reason for his request, aside from a general fear of lost evidence or prejudice to his claims. *See* [ECF No. 8 at 2]. It is not clear what he believes will be "lost" or how his claim will be prejudiced. Nor is the discovery request tailored to any existing claim in the complaint. Instead, it focuses on the post-judgment advances issue, which is not part of the complaint. *Id.* at 3. Plaintiff nevertheless assures us that his discovery request is "narrow, directly tied to the injunction request, within Defendants' control, and necessary to determine whether the [Claim for Post-Judgment Advances] is accurate, authorized, paid, reasonable, non-duplicative, and supported by admissible business records." *Id.* at 3–4. Expedited discovery is not automatically granted merely because the party seeks a preliminary injunction, and Plaintiff does not limit his discovery requests to information necessary to "preserve the status quo" as he must. *See, e.g.*, *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006) ("Surely, plaintiffs are not seeking expedited discovery to gain evidence to get the court to preserve the status quo. They want to gather all the evidence they would need to radically transform the status quo, on an expedited basis. But, that is not the purpose of a preliminary injunction, nor of the limited discovery that the courts traditionally permit a plaintiff to have to secure it."); *Dimension Data N. Am. v. NetStar–1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) (denying request for expedited discovery in part because "the discovery requested is not narrowly tailored to obtain information relevant to a preliminary injunction determination" and because "plaintiff has not made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26"). Instead, Plaintiff appears to seek information to support *anticipated* allegations— the "Amended Complaint" he previews in his filings. That falls well short of "good cause," and the expedited discovery request should be denied.

Finally, Plaintiff includes a request for an expedited hearing in both the Injunction Motion and the Preservation and Discovery Motion without explaining what he intends to present at such a hearing.  [ECF No. 7 at 2 ¶ 5; ECF No. 8 at 2 ¶ 5].  Because both motions rest on a likely preempted claim and conclusory allegations, these requests for a hearing should be denied.

*   *   *

In sum, Plaintiff has not shown he is likely to succeed on the merits of either version of his TILA claim; nor has he established he is likely to suffer irreparable injury in the absence of injunctive relief, so we recommend that his Injunction Motion be **DENIED**.  We recommend that the Preservation and Discovery Order also be **DENIED** because it merely restates the arguments in the Injunction Motion and requests sweeping discovery without supplying good cause for the request.

Within **14 days** from the date of this Report and Recommendation, the parties shall file written objections, if any, with the District Judge.  Failure to file timely objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898, 901 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 768–69 (11th Cir. 2016).

**DONE AND RECOMMENDED** in the Southern District of Florida on June 3, 2026.

_____
**YENEY HERNANDEZ**
**UNITED STATES MAGISTRATE JUDGE**

cc:     counsel of record

14